# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

LEON GLASPIE,

    Plaintiff,

v.

COUNTY OF GLOUCESTER, et al.,

    Defendants.

Civ. No. 15-7691 (RBK) (AMD)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

## I. INTRODUCTION

Plaintiff Leon Glaspie, a federal prisoner incarcerated at SCI Benner Township in Bellefonte, Pennsylvania, filed a civil rights complaint arising from a violation of the Interstate Agreement on Detainers ("IAD"). Currently pending before this Court is Defendant Gloucester County's motion to dismiss the complaint pursuant to Rule 12(b)(6) (ECF No. 41) and Plaintiff's motion for leave to amend the complaint (ECF No. 48). For the following reasons, Defendant's motion to dismiss the complaint is granted and Plaintiff's motion to amend the complaint is denied.

## II. BACKGROUND

The Court adopts and recites the relevant factual history of the case as set forth by the New Jersey Superior Court, Appellate Division:

> On November 5, 2008, [Plaintiff], while serving a five-year federal sentence for conspiracy to distribute cocaine, 18 U.S.C.A. § 371, was granted furlough from a federal halfway house in Philadelphia, Pennsylvania, to look for work. On that date, along with a co-defendant, he robbed a bank in Deptford, New Jersey, and fled the scene, injuring a police officer along the way. He was not apprehended until November 24, 2008. After the arrest, he was housed in the Philadelphia Federal Detention Center ("FDC"), where he continued to serve his sentence for the conspiracy while awaiting disposition of the new charge of escape, 18 U.S.C.A. § 751.

On January 5, 2009, the Deptford Police Department lodged a detainer against [Plaintiff]. … In early April 2009, Gloucester County indicted [Plaintiff] for second-degree robbery, N.J.S.A. 2C:15-1(a)(2), and second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2, 15-1(a)(2).

On April 27, 2009, the Gloucester County Prosecutor, pursuant to the IAD, submitted a certification in support of a state writ to the United States Department of Justice, Federal Bureau of Prisons, requesting [Plaintiff]'s temporary release to New Jersey authorities. The date scheduled for arraignment on the indictment was June 1, 2009. The Gloucester County Superior Court issued a companion order to produce to the County Sheriff, demanding [Plaintiff]'s delivery to the county jail for purposes of the hearing. Accordingly, on June 1, 2009, [Plaintiff] was transported, or "shuttled," to Gloucester County, arraigned, and returned to the Philadelphia FDC that same day.

On July 16, 2009, [Plaintiff] was indicted on the federal escape charge. *See* 18 U.S.C.A. § 751. He entered a guilty plea to the offense on August 26, 2009, and on December 15, 2009, was sentenced to twenty-seven months of imprisonment.

In the interim, the Gloucester County Superior Court issued additional writs to produce [Plaintiff] for proceedings on July 27, August 31, and October 23, 2009. On each occasion, [Plaintiff] was shuttled from the Philadelphia FDC to New Jersey, and returned the same or the following day.

On February 25, 2010, [Plaintiff] was transferred to Big Sandy, a federal penitentiary in Inez, Kentucky. The Gloucester County Prosecutor then lodged a second detainer against [Plaintiff] with Big Sandy. After [Plaintiff] requested final disposition from New Jersey under the IAD, he was transported to New Jersey from Kentucky on June 26, 2010. *See N.J.S.A.* 2AL159A-3.

In September 2010, a superseding indictment issued charging [Plaintiff] with second-degree robbery, N.J.S.A. 2C:15-1(a)(2); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2, 15-1(a)(2); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(5)(a); and first-degree robbery, N.J.S.A. 2C:15-1(a)(1).

*State v. Glaspie*, 60 A.3d 821, 822-23 (N.J. Super. Ct. App. Div. 2013).

Plaintiff filed a motion in the Superior Court of New Jersey, Trial Division, to dismiss the indictment based on a violation of the anti-shuttling provision of the IAD. (ECF No. 1 at p. 6). Specifically, Plaintiff argued that the four instances of shuttling between the Philadelphia FDC and the Gloucester County Correctional Facility in 2009 violated the IAD. (*See id.*). The trial court denied Plaintiff's motion on December 22, 2010. *See Glaspie*, 60 A.3d at 823. On March 3, 2011, Plaintiff entered a guilty plea to second-degree robbery on the superseding indictment. *See id.* Plaintiff was sentenced on April 15, 2011. *See id.*

Plaintiff appealed the denial of his motion and on February 28, 2013, the Superior Court of New Jersey, Appellate Division, granted Plaintiff's appeal and ordered that the indictment be dismissed with prejudice based on violation of the IAD's anti-shuttling provision. *See id.* at 827. The State appealed, and Plaintiff remained imprisoned in a New Jersey correctional facility until November 25, 2013, when the New Jersey Supreme Court denied review of the Appellate Division's decision. (*See* ECF No. 1 at p. 6).

On or about October 21, 2015, Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 asserting that he is entitled to monetary damages for the period of time between June 1, 2009 and November 25, 2013, during which he was illegally detained and unlawfully imprisoned. (*See* ECF No. 1 at pp. 6-7). On September 7, 2016, this Court issued an opinion dismissing all claims against the State of New Jersey, New Jersey Department of Corrections, Judge Walter L. Marshall, Jr., and Prosecutor Mary K. Pyffer and proceeding Plaintiff's claim against Gloucester County. (*See* ECF No. 5).

Gloucester County now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 41). Gloucester County argues that the statute of limitations on Plaintiff's false imprisonment claim has expired, or in the alternative, that Plaintiff has failed

to plead facts sufficient to state a claim under 42 U.S.C. § 1983. (*See id.* at pp. 6-8). Plaintiff filed a response in opposition to the motion to dismiss and Gloucester County filed a reply in support of its motion. (*See* ECF Nos. 45 & 47).

Thereafter, Plaintiff filed a motion for leave to amend his complaint. (*See* ECF No. 48). In the proposed amended complaint, Plaintiff seeks to assert the following claims against Gloucester County: (1) negligence for failing to abide by the provisions of the IAD; (2) failure to train employees on the provisions of the IAD; and (3) false imprisonment. (*See* ECF No. 48 at pp. 2-12). Additionally, Plaintiff appears to reassert the previously dismissed constitutional violation claims against Judge Walter L. Marshall, Jr. and Prosecutor Mary K. Pyffer. (*See* ECF No. 48 at pp. 14-20).

### III.   LEGAL STANDARDS

#### A. Dismissal under Rule 12(b)(6)

In resolving a motion to dismiss for failure to state a claim, under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In addition to the allegations of the complaint, a court may consider matters of public record, documents specifically referenced in or attached to the complaint, and documents integral to the allegations raised in the complaint. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017) (per curiam). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### B. Amendment under Rule 15(a)

Federal Rule of Civil Procedure 15(a) permits a party to amend his pleading before trial as a matter of course in limited circumstances, or otherwise with the consent of the opposing party or the court's leave. Plaintiff filed his motion to amend two months after Gloucester County's motions to dismiss, and was therefore not within the 21-day window to amend as of right under Federal Rule of Civil Procedure 15(a)(1). Rule 15(a)(2) permits Plaintiff to amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Although the court should freely give leave when justice so requires, the decision to grant leave to amend a complaint rests within the sound discretion of the trial court. *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983). The court may deny leave to amend only if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party; or (b) the amendment would be futile, meaning that the

5

complaint, as amended, would fail to state a claim upon which relief could be granted. *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In assessing "futility," the court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *Shane*, 213 F.3d at 115.

## IV. DISCUSSION

### A. Motion to Dismiss Original Complaint

Gloucester County argues that Plaintiff's false imprisonment claim is time-barred as his cause of action began to accrue at the time he was transported from the Philadelphia FDC to New Jersey on June 1, 2009. (*See* ECF No. 41 at p. 4). Therefore, under the two-year statute of limitations applicable to § 1983 actions, Gloucester County contends that Plaintiff should have filed his complaint in 2011. (*See id.*). In the alternative, Gloucester County argues that Plaintiff has failed to plead a viable constitutional claim. (*See id.* at p. 6).

In *Wallace v. Kato*, the Supreme Court expounded on the difference between the interrelated torts of false imprisonment and malicious prosecution, explaining that:

> false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.

549 U.S. 384, 389-90 (2007) (internal citations omitted). The torts, although related, are analytically different. A false imprisonment claim covers damages during the time of a plaintiff's detention up until the issuance of process or arraignment, whereas from that point forward any damages sought must be based on a malicious prosecution claim. *Id.* (internal citations omitted).

### 1. Detention without Legal Process (False Imprisonment)

To state a claim for false imprisonment, a plaintiff must establish: (1) that he was detained; and (2) that the detention was unlawful. *See Wallace*, 549 U.S. at 389. The statute of limitations for a § 1983 claim alleging false imprisonment in violation of the Fourth Amendment begins to run when the false imprisonment ends. *See id.* False imprisonment ends when the § 1983 claimant becomes held pursuant to the institution of his criminal proceedings, that is, when the claimant is arraigned on charges. *Id.* Although the § 1983 claimant could file a suit for false imprisonment once he is detained without legal process, the statute of limitations does not begin to run until he is detained pursuant to legal process. *Id.* at 390 n.3.

Here, Plaintiff has failed to allege sufficient facts demonstrating an unlawful detention without legal process by Gloucester County. After his arrest on November 24, 2008, Plaintiff states that the Gloucester County police took him to the Philadelphia FDC to finish serving the remainder of his prior federal sentence. (*See* ECF No. 1 at p. 5). Plaintiff does not appear to allege that he was in Gloucester County's custody prior to the institution of his state criminal proceedings, which began when he was arraigned on June 1, 2009.

Even assuming *arguendo* that Plaintiff was falsely imprisoned by Gloucester County prior to the initiation of his legal process, any claim for false imprisonment is time-barred. The two-year statute of limitations for a potential false imprisonment claim began running on June 1, 2009, when Plaintiff's false imprisonment ended. Accordingly, Plaintiff's false imprisonment claim shall be dismissed with prejudice.

### 2. Wrongful Institution of Legal Process (Malicious Prosecution)

While Plaintiff does not explicitly plead a cause of action for malicious prosecution in his complaint, he seeks damages for his imprisonment in a state correctional facility beginning from

his arraignment on June 1, 2009 until his release on November 25, 2013. (*See* ECF No. 1 at pp. 6-7). Any damages Plaintiff incurred as a result of this detention would only be available if Plaintiff were to succeed on a claim for malicious prosecution, and not for a claim of false imprisonment. *See Wallace*, 549 U.S. at 389-90.

A constitutional claim for malicious prosecution in the Third Circuit requires a plaintiff to establish the following elements: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir.2009) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). The plaintiff has the burden to establish each of the elements of his § 1983 malicious prosecution claim. *See Camiolo v. State Farm Fire and Cas. Co.*, 334 F.3d 345, 362-63 (3d Cir. 2003).

To satisfy the favorable termination element, the Third Circuit requires that a prior criminal case had been disposed of in a way that indicates the innocence of the accused. *See Malcomb v. McKean,* 535 F. App'x 184, 186 (3d Cir. 2013); *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002); *Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000) (noting that "a plaintiff claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution."). Accordingly, "a malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner [that is] not indicative of the innocence of the accused." *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009). The purpose of the favorable termination requirement is to avoid the possibility of a claimant's succeeding in a tort action after being validly convicted in the underlying criminal case. *Id.* Such a result would contravene the "strong judicial policy

against the creation of two conflicting resolutions arising out of the same or identical transaction." *Id.* (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)).

The IAD, to which New Jersey and the United States are parties, establishes procedures by which a member state, including the United States, may procure a prisoner from another member jurisdiction for trial. *See Alabama v. Bozeman*, 533 U.S. 146, 148 (2001). The IAD "may be triggered when the state in which the trial is to be had, the receiving state, lodges a 'detainer' with the state in which a prisoner is incarcerated, the sending state." *Diggs v. Owens*, 833 F.2d 439, 441 (3d Cir. 1987), *cert. denied,* 485 U.S. 979 (1988). Article IV(e) of the IAD,[1] commonly referred to as the "anti-shuttling" provision provides "that if the prisoner is returned to the sending state before trial, the charges against him must be dismissed." *Id.* at 442.

As Plaintiff's complaint acknowledges, and as the Appellate Division's opinion confirms, Plaintiff's state criminal charges were dismissed due to a procedural violation of the IAD. *See Glaspie*, 60 A.3d at 826-27 ("[W]e have no alternative but to conclude that the IAD means what it says, even when the violation may appear to be merely technical."). Plaintiff has not alleged any facts indicating that, despite the explicit language in the Appellate Division's opinion, his conviction was overturned because he was innocent of the underlying state robbery charges. Additionally, at no point during the criminal proceedings and subsequent appeal is Plaintiff alleged to have asserted his innocence or disputed the veracity of his guilty plea. Thus, the dismissal of

---

[1] The anti-shuttling provision states:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's (sic) being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C. App. 2, § 2, art. IV(e).

9

Plaintiff's state criminal charges due to a violation of the IAD's anti-shuttling provision is not a basis to allege that his criminal proceeding ended in a favorable termination. *See Lara v. Johnson*, 141 F.3d 239, 243 (5th Cir.), *reh'g granted, opinion modified*, 149 F.3d 1226 (5th Cir. 1998) (alleged IAD violation did not cause "a possibility that an innocent man was convicted and imprisoned"); *Banks v. Hickenlooper*, No. 16-1725, 2016 WL 9632940, at *2 (Oct. 26, 2016) (noting that "[d]ismissal of criminal charges due to violations of the IAD does not bear on Plaintiff's innocence."). Accordingly, Plaintiff's malicious prosecution claim under § 1983 is dismissed with prejudice.

### B. Motion to Amend

A plaintiff may assert a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

10

### 1. Negligence Claim

In his proposed amended complaint, Plaintiff alleges that Gloucester County was negligent in wrongfully and illegally imprisoning him. (*See* ECF No. 48 at pp. 2-6). This proposed amendment is futile, however, as negligence is not actionable under § 1983.

The Supreme Court has held that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). "[M]erely negligent misconduct will not give rise to a claim under § 1983; the state defendant must act with a higher degree of intent." *Burton v. Kindle*, 401 F. App'x 635, 637 (3d Cir. 2010) (citing *Lewis*, 523 U.S. at 849). Indeed, the Supreme Court has long held that prison authorities' mere negligence in and of itself does not violate a prisoner's constitutional rights. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 n.2 (3d Cir. 2001). The United States Constitution is not a "font of tort law." *Lewis*, 523 U.S. at 847 n.8, 848 ("[T]he Constitution does not guarantee due care on the part of state officials."); *Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009). Accordingly, Plaintiff's attempt to bring a negligence claim against Gloucester County would be futile as he fails to state a claim upon which relief may be granted.

### 2. Failure to Train Claim

Plaintiff's amended complaint also attempts to assert a claim against Gloucester County for failing to train, educate, and properly inform its employees on the requirements of the IAD. (*See* ECF No. 48 at p. 6). Without any additional facts, Plaintiff alleges that Gloucester County has a policy and custom of transferring inmates into its jurisdiction in violation of the IAD. (*See id.* at p. 7). Plaintiff claims that this policy and Gloucester County's failure to train its employees led to a pattern of IAD violations in his case. (*See id.* at p. 8).

A municipality "'can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.'" *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)), *cert. denied*, 546 U.S. 899 (2005). "There must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation' to ground municipal liability." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 249-50 (quoting *City of Canton*, 489 U.S. at 385). "Thus, municipal liability attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). A plaintiff can establish a custom "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir.) ("Custom may be established by proof of knowledge and acquiescence."), *cert. denied*, 492 U.S. 919 (1989). "In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Id.* (citing *Andrews*, 895 F.2d at 1480).

Failure to train or supervise claims "are generally considered a subcategory of policy or practice liability." *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom.*, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Thus, the plaintiff must

allege facts suggesting that "the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010); *City of Canton*, 489 U.S. at 388 ("the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" but it will not suffice "to prove that an injury or accident could have been avoided if an officer had better or more training").

Here, Plaintiff's amended complaint fails to state a claim against Gloucester County for municipal liability under § 1983. The amended complaint does not set forth sufficient facts to establish that Gloucester County instituted or maintained a policy, practice, or custom that directly caused a constitutional harm to Plaintiff. The allegations included in Plaintiff's amended complaint set forth only "vague assertions" of policy, custom, or practice that are insufficient to plead municipal liability. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995). Other than these conclusory and generalized assertions about unspecified patterns of misconduct, Plaintiff has plead no facts to support the existence of any policy, custom, or practice beyond his own transfer to New Jersey.

Moreover, the specific facts surrounding Plaintiff's transfers to New Jersey contradict his assertion that Gloucester County promulgated and maintained a policy that caused his alleged constitutional violation. As detailed in the Appellate Division's opinion, attached as an exhibit to the proposed amended complaint, Plaintiff was first transferred to New Jersey following the issuance of an order from the Superior Court of New Jersey demanding Plaintiff's delivery to the Gloucester County jail. *See Glaspie*, 60 A.3d at 823. Thereafter, the Superior Court issued three additional writs to produce Plaintiff for proceedings. *See id.* These facts indicate that Plaintiff was not transferred pursuant to a policy established by Gloucester County, but rather was

transferred pursuant to orders issued by the Superior Court, which is a division of the State of New Jersey. *See Dey-El v. Rosenberg*, No. 14-7091, 2015 WL 4391399, at *4 (D.N.J. July 15, 2015) ("The Superior Court is an entity of the State of New Jersey."). Accordingly, Plaintiff's attempt to raise a failure to train claim against Gloucester County is futile because he fails to state a claim for municipal liability under § 1983 based on the allegations of the proposed amended complaint.

### 3. Remaining Claims

The remaining claims asserted in Plaintiff's amended complaint are similarly futile. As discussed above, Plaintiff's false imprisonment and malicious prosecution claims against Gloucester County fail. Additionally, as previously discussed in this Court's screening opinion dated September 7, 2016 (ECF No. 5), Plaintiff's claims against Judge Walter L. Marshall, Jr. and Prosecutor Mary K. Pyffer are barred by judicial and prosecutorial immunity. Accordingly, Plaintiff's motion for leave to file an amended complaint is denied.

## V. CONCLUSION

For the foregoing reasons, Gloucester County's motion to dismiss the original complaint will be granted and Plaintiff's motion to amend the complaint will be denied. An appropriate order will be entered.


DATED: August 22 , 2018                      s/Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge